STEPHEN O. RANDALL *vs.* RHODE ISLAND LUMBER COMPANY.

PROVIDENCE—JULY 14, 1898.

PRESENT: Stiness, Tillinghast, and Rogers, JJ.

Generally, one who takes a promissory note as collateral security for a debt becomes a *bona fide* holder thereof for value.

While circumstances will make a principal liable on negotiable paper, even though his agent has exceeded his authority in issuing it, yet the rule has no application when the circumstances are such as necessarily put the holder upon inquiry.

If, when taking the note, the holder knew that all the property of the principal was in the hands of its assignee for the benefit of creditors, that is sufficient to put him upon inquiry.

And the holder is also put upon inquiry as to the authority to issue it if, when receiving it, he knows that the note is issued by the agent to himself and is used for his personal benefit.

The treasurer of a corporation issued the company's note to himself to pay a disputed claim for his services, and transferred it to the plaintiff before maturity as security for a pre-existing debt; at the time all the company's assets were in the hands of its assignee for the benefit of creditors; a subsequent settlement of its affairs resulted in its receiving back a remaining balance; the treasurer afterwards executed a release to the company of all his demands against it, and sold all his stock to new stockholders, who became the company, for a sum determined by the showing on the company's books, in which there was no entry relative to the note; thereafterwards he notified the plaintiff of his settlement with, and withdrawal from, the company, and told him to present his note for payment; plaintiff knew of the transactions, but kept the note secret until he received this notice :—

*Held*, that the plaintiff took the note under circumstances putting him upon inquiry, and charging him with the equities which attached to it.

*Held*, further, that to enforce payment of the note under the circumstances would be a gross fraud upon the purchasers of the stock.

*Held*, further, that whether the plaintiff was or was not in collision with the maker of the note, his delay, under the circumstances known to him, estopped him from obtaining payment.

When one of two innocent parties must suffer, it must be he whose conduct has been such as to result in injury to the other.

Stockholders are practically the corporation, in the sense that a wrong to it is a wrong to them; the distinct entity of the corporation does not affect the justice of the case.

ASSUMPSIT on a promissory note, all the essential facts appearing in the opinion. Heard on plaintiff's petition for a new trial.

STINESS, J. The plaintiff sues upon a promissory note dated March 10, 1894, executed by E. R. Randall, treasurer of the defendant corporation, payable to said E. R. Randall, and by him endorsed to the plaintiff. It is claimed that the note was for salary due to the payee for services as treasurer.

At the trial of the case before a jury, the plaintiff testified that he took the note before its maturity, as collateral security for a pre-existing debt due to him from said E. R. Randall, and for money which he afterwards advanced. Several months prior to the date of this note the R. I. Lumber Co.

had made an assignment of all its property for the benefit of its creditors, and this fact was known to the plaintiff.

The note was due May 12, 1894, but at the request of E. R. Randall the plaintiff did not present it for payment, or give any notice of the existence of the note until January 8, 1896.

In the meantime the affairs of the company had been settled; a balance in the hands of the assignee had been turned back; said E. R. Randall had settled a suit of his against the company and had executed a release to the company of all demands against it, and October 26, 1895, he sold out his stock to James A. Potter & Co., for the sum of $5,400 and his note for $6,500, held by them upon a pledge of his stock, the value of the stock being computed by the company's books, in which no entry of any kind in regard to this note appeared.   After this sale had been completed, E. R. Randall told the plaintiff that he had got out of the company and to present his note, which he did January 8, 1896.

The court directed a verdict for the defendant, and the plaintiff petitions for a new trial.

While the mere statement of this brief outline of the case would seem to be sufficient to satisfy most minds as to what the verdict of a jury must be, the question before us is whether the verdict was rightly directed, and that must be examined as a question of law and not as a question of fact.

The plaintiff claims, in the first place, that in taking the note as collateral security for a debt, he is a *bona fide* holder for value.   Although there are decisions to the contrary in other States, that is the law in this State.   *Bank* v. *Carrington*, 5 R. I. 515; *Cobb* v. *Doyle*, 7 R. I. 550.

He next claims that the fact of the note being made payable by the treasurer of the company to himself simply puts the holder upon inquiry whether the person signing was the treasurer; and that, where it has been the custom of the treasurer to issue notes in the name of the corporation, the corporation is bound by such acts.

Undoubtedly there may be a variety of circumstances which will make a principal liable on negotiable paper even though his agent has exceeded his authority.   It is, therefore, un-

necessary to review the cases cited by the plaintiff to sustain this point.     They are chiefly cases where a note was made or transferred to a third party for the debt of the corporation, and the liability was determined by the general authority or course of dealing of the officers.     The rule, however, has no application when the circumstances are such as necessarily to put the holder upon inquiry, and this is the vital question in this case.

The plaintiff knew that, both at the date of the note and at the time of the transfer to him, all of the property of the company was in the hands of an assignee for the benefit of creditors.     It could not have had assets in its hands with which to make payment, and the testimony shows that it did not have any.     The plaintiff, as a business man engaged in banking, must have known that under such circumstances negotiable paper could not be issued in the ordinary course of business.     The company was not in condition to do ordinary business.     The plaintiff testified that he knew the business of the company had stopped; but it appears that in February, 1894, without assets, stock, or supplies, except what was in the hands of the assignee, business had been resumed, in a small way, in the company's name.     The fact, however, that the plaintiff knew that all the assets of the company were in the hands of an assignee was sufficient to put him upon inquiry.

Moreover, the note showed that it was issued by the treasurer to himself, which has been held to be enough to put a holder upon inquiry as to the authority to issue it, when it is used for the personal benefit of the agent.     *Chemical Bank* v. *Wagner*, 93 Ky. 525; *West Bank* v. *Shawnee Bank*, 95 U. S. 557; *Wilson* v. *Metropolitan R. R. Co.*, 120 N. Y. 145; *Claflin* v. *Farmer's Bank*, 25 N. Y. 293.     The principle of these cases, and many others which might be cited to the same effect, is that the paper shows upon its face that the agent in making it is dealing with himself, and the holder knows that the agent is not using the paper in the ordinary course of business to pay a debt of the principal but for the agent's own debt, and hence that the holder is bound to in-

quire into the agent's authority. This is a sound and necessary principle.

But the plaintiff further claims that this note was issued to E. R. Randall for money due to him for services as treasurer and, hence, as the company has received the benefit of it, there was consideration for it and the company cannot deny its liability.

Aside from the facts that the defendant denies that anything was due for salary and that the books showed that E. R. Randall owed the company at the date of the note, we fail to see from the record how the company has received any benefit from the note.  It did not know that the note was in existence, and it settled with E. R. Randall in ignorance of such a claim.  The purchasers of the stock, who are now the company, made the purchase on the basis of assets and liabilities, as shown by the books.  While this was going on the plaintiff knew of the proposed purchase; and although the note had been overdue and unpaid for more than a year and a half, he kept it a secret until E. R. Randall notified him that he had got out of the company, and then he made his demand for payment.  To enforce the payment of the note under these circumstances would be a gross fraud upon the purchasers of the stock, and they are now the company. Whether the plaintiff was in collusion with his nephew to bring about such a result may be a question of fact; but even so, as a matter of law, his delay for so long a time to make known his claim, when he knew of the proposed sale of the stock, is sufficient to estop him from enforcing it. If he acted innocently, still, when one of two innocent parties must suffer, it must be he whose conduct has been such as to result in injury to the other, if the claim of the former should be allowed.  The plaintiff was clearly in fault in keeping the note secret while he knew that negotiations were going on to restore the company to active business.  The request to do so of the payee of the note was not only enough to arouse suspicion as to its validity, but also to compel the plaintiff to make his claim known before conditions should be changed in ignorance of it.  The fact that the corpora-

tion is a distinct entity does not affect the justice of the case. The stockholders are practically the corporation, and a wrong to one is a wrong to the other.

We think that it is clear that the plaintiff took the note under such circumstances as to put him on inquiry and to charge him with the equities which attached to it, if it had any validity at all. When the note was demanded, E. R. Randall had been paid in full and had executed his release to the company. · Nothing was due to him by note or otherwise. He could not recover anything from the defendant, and the plaintiff under the same equities could recover nothing. The verdict was, therefore, rightly directed for the defendant.

Petition for new trial denied, and case remitted to the Common Pleas Division for judgment.

*Edward D. Bassett and Edward L. Mitchell*, for plaintiff.
*Simon S. Lapham and Albert A. Baker*, for defendant.